**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

CAPRESE GARDNER,

                Petitioner,

                                   CASE NO. 2:08-CV-14523
v.                                HONORABLE ARTHUR J. TARNOW

JEFFREY WOODS,

                Respondent.
_____/

<u>**OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS,
GRANTING IN PART AND DENYING IN PART A CERTIFICATE OF
APPEALABILITY, AND GRANTING LEAVE TO APPEAL IN FORMA PAUPERIS**</u>

        Caprese Gardner, ("petitioner"), confined at the Kinross Correctional Facility in

Kincheloe, Michigan, has filed a petition for a writ of habeas corpus pursuant to 28

U.S.C. § 2254, in which he challenges his conviction for second-degree murder,

M.C.L.A. 750.317; felon in possession of a firearm, M.C.L.A. 750.224f; felony firearm,

second offense, M.C.L.A. 750.227b; and being a third felony habitual offender, M.C.L.A.

769.11. [1]  For the reasons that follow, the petition for writ of habeas corpus is DENIED.

---

      [1]  When petitioner originally filed his petition for writ of habeas corpus, he was
incarcerated at the Mound Correctional Facility, but has since been transferred to the
Kinross Correctional Facility.  The only proper respondent in a habeas case is the
habeas petitioner's custodian, which in the case of an incarcerated habeas petitioner
would be the warden of the facility where the petitioner is incarcerated. *See Edwards
Johns,* 450 F. Supp. 2d 755, 757 (E.D. Mich. 2006); *See also* Rule 2(a), 28 foll. U.S.C. §
2254.  Therefore, the Court substitutes Warden Jeffrey Woods in the caption.

## I.  Background

Petitioner was originally charged with first-degree premeditated murder,  felon in possession of a firearm, and felony-firearm, second offense.  Following a jury trial in the Wayne County Circuit Court, petitioner was found guilty of the lesser included offense of second-degree murder and guilty as charged of the other two offenses.  Petitioner's conviction arose from the shooting of Dawan Bibbs at James Wright's home in Detroit, Michigan at about 7:00 in the morning on Sunday, October 8, 2000.

The prosecutor's theory of the case was that petitioner came to James Wright's house because he thought that Bibbs had stolen a gun from him.  Petitioner shot Bibbs during the confrontation.  The prosecutor also argued that Wright did not commit the murder, even though police discovered gunshot residue on his hands after the killing.

The defense theory was that petitioner was not guilty of murdering the victim. The defense argued that James Wright shot Bibbs and subsequently blamed the shooting on petitioner.  The defense pointed out that Wright had gunshot residue on his hands after the shooting and had delayed calling 911 after the shooting in order to clean the house of incriminating evidence, including the murder weapon and the shell casings.

Tonia Pinson was Dawan Bibbs' mother and petitioner's girlfriend.  Pinson and petitioner lived together with several of their children.  At the time of the murder, Bibbs was living with James Wright, because Pinson had problems with his behavior.  After Bibbs moved out of their house, petitioner discovered that his gun, a Tech 9 (also called a TEC-9), was missing. Pinson and petitioner both thought that Bibbs had taken it.  After

*Gardner v. Woods,* U.S.D.C. 2:08-CV-14523

Bibbs had denied taking the gun, petitioner informed Pinson that he had obtained

another gun, a MAC 10 or 11.

On the morning of October 8, 2000, Pinson returned home at about 4:00 a.m.

Petitioner got into an argument with Pinson about her coming home  late and then left

the house.  At about 8:30 that morning, the police came to Pinson's home, looking for

petitioner.  Dawan Bibbs died in the hospital the following Wednesday.

James Wright testified that Dawan Bibbs was living at his house in Detroit after

being kicked out of his own home.   Wright testified that at about 7:00 a.m. on October

8, 2000, Wright was sleeping on the living room couch and Bibbs was in the bedroom

when Wright heard knocking on the front door.  When Wright answered the door, a man

asked for Dawan Bibbs.  Wright positively identified petitioner as this man.  Wright woke

Bibbs up.  Bibbs and petitioner talked on the porch.  While walking back to the couch,

Wright heard six gunshots fired in rapid succession while Bibbs stood in the front

doorway.  Bibbs backed into the house.  Wright initially ran into the bathroom and

locked the door, but came out when he heard Bibbs calling for him.  Bibbs was lying on

his back near the front door.  Wright asked Bibbs who shot him, and Bibbs "said

Caprese did it."

Wright ran to the nearby home of Jermaine Baldwin and Andre Sewell, Baldwin's

brother, and told Sewell to call 911.  Sewell and Baldwin then came to Wright's house,

where Bibbs told both men that "Caprese" had shot him.  The following March, Wright

viewed a police lineup and immediately identified petitioner as the shooter.

3

*Gardner v. Woods,* U.S.D.C. 2:08-CV-14523

Jermaine Baldwin and Andre Sewell both testified that they were awakened by James Wright on the morning of October 8, 2000 and went over to Wright's house, where they observed Dawan Bibbs lying in the vestibule. When Mr. Baldwin asked Bibbs what happened, Bibbs "said Caprese shot him."

Sewell testified that he asked Bibbs what had happened, and "[h]e said his mama's boyfriend shot him."

James Wright, Jermaine Baldwin, and Andre Sewell all admitted that they had prior convictions, *i.e.*, for larceny of a car, breaking and entering, and receiving and concealing stolen property, respectively.

The pathologist testified that the cause of death was the multiple gunshot wounds. The pathologist believed that Bibbs could have talked for up to about thirty minutes after being shot.

The police investigation showed that there were vacant lots on both sides of James Wright's house. The front door of Wright's house was steel and had gouge marks and footprints on it. Police noticed old bullet holes in various spots in the house, including one of the bedroom doors and in the wall between the bedroom and closet. James Wright informed the police that Dawan Bibbs had told him that a MAC-10, an automatic weapon, was used by petitioner. The police recovered three bullets, two from the scene and one from Bibbs' shoulder. All three bullets were nine millimeter caliber and shot from the same gun, which possibly could have been a MAC-10 or a TEC-9. The police did not find any cartridge casings at Wright's house and the murder weapon was never recovered.

4

*Gardner v. Woods,* U.S.D.C. 2:08-CV-14523

Police chemist William Steiner testified that he found gunshot-residue on James Wright's hands and pants pockets.  However, Steiner had originally been told by the officer in charge of the case that the analysis of the gunshot-residue kit taken from Wright was unnecessary, so he did not do the analysis until April, more than six months after the shooting.

Officer Mark Amos of the Detroit Police Department arrested petitioner on March 6, 2001, outside a store in Detroit.  Petitioner initially gave the police a false name, but a bill receipt in his possession had his actual name.  When Office Amos showed petitioner the arrest warrant and told him what he was being charged with and the location where the shooting had taken place, petitioner "stated he was there when the shit went down but he had left."

The prosecutor and defense counsel stipulated that petitioner had a prior conviction for felonious assault and his rights to possess a firearm had not been restored.

Kimberly Jones testified as an alibi witness for petitioner.  Jones and petitioner had a daughter together.  On Saturday, October 7, 2000, Jones called petitioner and informed him that their daughter was ill and needed to be taken to the hospital.  Jones testified that petitioner arrived at her house at about 5:00 a.m. on October 8, 2000 and remained at her house until about 10:00 a.m.

Petitioner's conviction was affirmed on appeal. *People v. Gardner,* No. 238186 (Mich.Ct.App. April 15, 2003); *lv. den.* 469 Mich. 975, 671 N.W.2d 884 (2003). Petitioner then filed a post-conviction motion for relief from judgment pursuant to M.C.R.

5

*Gardner v. Woods,* U.S.D.C. 2:08-CV-14523

6.500, *et. seq.* The trial court denied petitioner's motion for relief from judgment. *People v. Gardner,* No. 01-003494-01 (Wayne County Circuit Court, December 17, 2004). The Michigan Court of Appeals denied petitioner leave to appeal. *People v. Gardner,* No. 267317 (Mich.Ct. App. July 10, 2006). The Michigan Supreme Court granted petitioner leave to appeal on his claim that he had been improperly charged as a third felony habitual offender and that counsel had been ineffective for failing to object to the improper habitual offender charge. *People v. Gardner*, 477 Mich. 1096, 729 N.W.2d 519 (2007). The Michigan Supreme Court ultimately held that it was proper under Michigan law to charge petitioner with being a third felony habitual offender and that counsel was not ineffective for failing to object to the third felony habitual offender charge. *People v. Gardner,* 482 Mich. 41, 753 N.W. 2d 78 (2008)(Cavanagh and Kelly, JJ., dissenting).

Petitioner seeks a writ of habeas corpus on the following grounds:

I. Trial counsel failed to investigate information which charged Petitioner as a third habitual offender.

II. Trial counsel failed to challenge the suggestiveness of the identification made by the chief witness James Wright.

III. Petitioner was denied the opportunity to refute the bogus "eleven word" statement by way of a *Walker* hearing.

IV. Counsel failed to impeach witnesses who gave perjured testimony at the preliminary examination and at Circuit Court.

V. Petitioner was denied effective assistance of appellate counsel.

VI. Improper reference made by a veteran police officer to Petitioner's prior criminal record.

VII. Prosecutor made numerous improper comments during closing argument which accumulated to error.

6

*Gardner v. Woods,* U.S.D.C. 2:08-CV-14523

VIII. The prosecutor argued in her closing rebuttal, information pertaining to Petitioner's arrest, including the bogus statement which was not in the scope of defense counsel's closing.

IX. The prosecutor argued in closing rebuttal, that the victim Dawan Bibbs, told the chief witness James Wright, that petitioner put a MAC-10 up to his head.

X. The prosecutor attacks the credibility of defense counsel's methods for defending clients and insinuated how feebly they make arguments.

XI. The prosecutor argued in closing rebuttal, that petitioner was fleeing prosecution and that the jury would be instructed that that was a conscience [sic] of guilt.

XII. The prosecutor vouched for the credibility of the police officer who arrested Petitioner.

## II.  Standard of Review

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

(1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-

7

*Gardner v. Woods,* U.S.D.C. 2:08-CV-14523

06 (2000).  An "unreasonable application" occurs when "a state court decision

unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case."

*Id.* at 409.  A federal habeas court may not "issue the writ simply because that court

concludes in its independent judgment that the relevant state-court decision applied

clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

### III.  Discussion

### A.  The procedural default issue.

Respondent contends that all but the first of petitioner's claims are procedurally

defaulted, because he raised them for the first time in his post-conviction motion for

relief from judgment and failed to show cause for failing to raise these issues in his

appeal of right, as well as prejudice, as required by M.C.R. 6.508(D)(3).

Under the procedural default doctrine, a federal habeas court will not review a

question of federal law if the state court's decision rests on a substantive or procedural

state law ground that is independent of the federal question and is adequate to support

the judgment. *See Coleman v. Thompson*, 501 U.S. 722, 729 (1991).  However, "a

procedural default does not bar consideration of a federal claim on either direct or

habeas review unless the last state court rendering a judgment in the case 'clearly and

expressly' states that its judgment rests on the procedural bar." *Harris v. Reed*, 489

U.S. 255, 263 (1989).  If the last state court judgment contains no reasoning, but

simply affirms the conviction in a standard order, the federal habeas court must look to

the last reasoned state court judgment rejecting the federal claim and apply a

8

*Gardner v. Woods,* U.S.D.C. 2:08-CV-14523

presumption that later unexplained orders upholding the judgment or rejecting the

same claim rested upon the same ground. *Ylst v. Nunnemaker*, 501 U.S. 797, 803

(1991).

In the present case, the Michigan Court of Appeals rejected the petitioner's post-

conviction appeal on the ground that "the defendant has failed to meet the burden of

establishing entitlement to relief under MCR 6.508(D)."  The Michigan Supreme Court,

after rejecting petitioner's first claim on the merits, denied leave to appeal with respect

to petitioner's remaining claims because he had "failed to meet the burden of

establishing entitlement to relief under MCR 6.508(D)." *People v. Gardner,* 482 Mich. at

70.  Neither the Michigan Court of Appeals' form order nor the Michigan Supreme

Court's opinion referred to subsection (D)(3) or mentioned the petitioner's failure to

raise these claims on his direct appeal as their rationale for rejecting his post-conviction

claims.  Because the Michigan Court of Appeals' form order and the Michigan Supreme

Court's opinion citing Rule 6.508(D) are both ambiguous as to whether they refer to

procedural default or a denial of post-conviction relief on the merits, the orders are

unexplained. *See Guilmette v. Howes*, 624 F. 3d 286, 291 (6th Cir. 2010).  This Court

must "therefore look to the last reasoned state court opinion to determine the basis for

the state court's rejection" of the petitioner's claims. *Id.*

The trial court rejected petitioner's prosecutorial misconduct claims on the merits

without mentioning M.C.R. 6.508(D)(3) or petitioner's failure to raise the claims on his

direct appeal as the basis for rejecting these claims. *People v. Gardner,* No. 01-

003494-01, Slip. Op. at * 2.  The trial court judge then stated that with respect to the

9

*Gardner v. Woods,* U.S.D.C. 2:08-CV-14523

remaining issues, petitioner was required to establish good cause and prejudice to

obtain post-conviction relief.  The trial judge concluded that petitioner had failed to

meet this burden with respect to these claims.  The trial judge found that petitioner had

failed to show actual prejudice, as required by M.C.R. 6.508(D)(3)(b)(i) in order to

obtain relief. *Id.*

The trial judge's opinion is itself ambiguous about which claims are procedurally

defaulted and which claims are not.  Therefore, it is not at all clear which of petitioner's

post-conviction claims were procedurally defaulted and which claims were not.  It is

therefore difficult for this Court to determine precisely which of petitioner's claims may

have been procedurally defaulted and which were rejected on the merits by the trial

judge.

Moreover, petitioner claims that his appellate counsel was ineffective for failing

to raise his claims in his appeal of right.  Ineffective assistance of counsel may

establish cause for procedural default. *Edwards v. Carpenter*, 529 U.S. 446, 451-52

(2000).  If petitioner could show that he received ineffective assistance of appellate

counsel that rose to the level of a Sixth Amendment violation, it would excuse his

procedural default for failing to raise his claims on his direct appeal in the state courts.

*Seymour v. Walker*, 224 F. 3d 542, 550 (6th Cir. 2000).  Given that the cause and

prejudice inquiry for the procedural default issue merges with an analysis of the merits

of petitioner's defaulted claims, it would be easier to consider the merits of these

claims. *See Cameron v. Birkett,* 348 F. Supp. 2d 825, 836 (E.D. Mich. 2004).

Additionally, petitioner could not have procedurally defaulted his ineffective assistance

10

*Gardner v. Woods,* U.S.D.C. 2:08-CV-14523

of appellate counsel claim, because state post-conviction review was the first

opportunity that he had to raise this claim. *See Guilmette,* 624 F. 3d at 291; See also

*Hicks v. Straub*, 377 F. 3d 538, 558, n. 17 (6th Cir. 2004).

This Court notes that procedural default is not a jurisdictional bar to review of a

habeas petition the merits. *See Trest v. Cain*, 522 U.S. 87, 89 (1997).  In addition,

"[F]ederal courts are not required to address a procedural-default issue before deciding

against the petitioner on the merits." *Hudson v. Jones*, 351 F. 3d 212, 215 (6th Cir.

2003)(citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)).  "Judicial economy might

counsel giving the [other] question priority, for example, if it were easily resolvable

against the habeas petitioner, whereas the procedural-bar issue involved complicated

issues of state law." *Lambrix*, 520 U.S. at 525. Because "the procedural default issue

raises more questions than the case on the merits", this Court will assume, for the sake

of resolving the claims, that there is no procedural default by petitioner and will decide

the merits of the claims. *See Falkiewicz v. Grayson,* 271 F. Supp. 2d 942, 948 (E.D.

Mich. 2003)(internal quotation omitted).

**B.    The ineffective assistance of counsel claims.**

**1.    Trial counsel failed to investigate information which charged Petitioner as a third habitual offender.**

**2.    Trial counsel failed to challenge the suggestiveness of the identification made by the chief witness James Wright.**

11

*Gardner v. Woods,* U.S.D.C. 2:08-CV-14523

**3.    Petitioner was denied the opportunity to refute the bogus "eleven word" statement by way of a *Walker* hearing.**

**4.    Counsel failed to impeach witnesses who gave perjured testimony at the preliminary examination and at Circuit Court.**

**5.    Petitioner was denied effective assistance of appellate counsel.**

In his first four claims, petitioner contends that he was denied the effective assistance of trial counsel.  In his fifth claim, petitioner contends that he was deprived of the effective assistance of appellate counsel.

To show that he was denied the effective assistance of counsel under federal constitutional standards, a defendant must satisfy a two prong test.  First, the defendant must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  In so doing, the defendant must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. *Id.*  In other words, petitioner must overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy. *Strickland,* 466 U.S. at 689.  Second, the defendant must show that such performance prejudiced his defense. *Id.*  To demonstrate prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have

12

*Gardner v. Woods,* U.S.D.C. 2:08-CV-14523

been different." *Strickland,* 466 U.S. at 694.  The *Strickland* standard applies as well to

claims of ineffective assistance of appellate counsel. *See Whiting v. Burt,* 395 F.3d

602, 617 (6th Cir. 2005).  To prevail on his ineffective assistance of counsel claims, a

habeas petitioner must show that the state court's conclusion regarding these claims

was contrary to, or an unreasonable application of, *Strickland.*

> **1.      Trial counsel failed to investigate information
> which charged Petitioner as a third habitual
> offender.**

Petitioner first contends that his trial counsel and appellate counsel were

ineffective for failing to challenge the third habitual offender charge in this case.

Petitioner had previously been convicted of felonious assault and felony-firearm, which

had arisen out of the same act.  Under Michigan law in effect at the time of petitioner's

sentencing, the two convictions should have been counted as a single prior felony

conviction for purposes of Michigan's habitual offender law.  Petitioner argues that he

should have only been charged with being a second felony habitual offender pursuant

to M.C.L.A. 769.10, which would have exposed him to a lower guidelines range for the

second-degree murder and felon in possession convictions. [2]

At the time of petitioner's conviction, the Michigan Supreme Court had held that

multiple convictions which arose out of a single criminal incident could be counted as

---

[2]   The sentence for felony-firearm in Michigan is a mandatory two year prison
sentence that must be served consecutively to any underlying felony. *See* M.C.L.A.
750.227b.  Hence, the crime of felony-firearm is not covered by the Michigan
Sentencing Guidelines. *People v. Johnigan,* 265 Mich. App. 463, 472; 696 N.W. 2d 724
(2005).

*Gardner v. Woods,* U.S.D.C. 2:08-CV-14523

only a single prior conviction for habitual offender purposes.  *See People v. Preuss*, 436 Mich. 714, 461 N.W.2d 703 (1990); *People v. Stoudemire*, 429 Mich. 262, 414 N.W.2d 693 (1987), *mod. by Preuss*, *supra* at 739.

In petitioner's case, the Michigan Supreme Court overruled their previous holdings in *Preuss* and *Stoudemire* and held that convictions for multiple crimes that are committed during a single criminal transaction count as separate convictions for the purposes of Michigan's habitual offender laws. *People v. Gardner,* 482 Mich. at 68.  In so ruling, the Michigan Supreme Court concluded:

> Michigan's habitual offender laws clearly contemplate counting each prior felony conviction separately.  The text of those laws does not include a same-incident test.  This Court erred by judicially engrafting such a test onto the unambiguous statutory language.  Accordingly, we overrule *Preuss* and *Stoudemire.*

> *Id.*

The Michigan Supreme Court concluded that because petitioner was properly sentenced as a third felony habitual offender, re-sentencing was "not required on the basis of his claim that he received ineffective assistance of counsel." *People v. Gardner,* 482 Mich. at 68-69.

In *Lockhart v. Fretwell*, 506 U.S. 364, 366 (1993), the U.S. Supreme Court held that when a lawyer fails to raise "an objection that would have been supported by a decision which subsequently was overruled," a defendant cannot show that he was prejudiced for purposes of the *Strickland* test.  In such a case, it is improper for a reviewing court to focus on "mere outcome determination", because the result of the proceeding was not fundamentally unfair or unreliable. *Id.* at 369.  The U.S. Supreme

14

*Gardner v. Woods,* U.S.D.C. 2:08-CV-14523

Court concluded that "[T]o set aside a conviction or sentence solely because the outcome would have been different but for counsel's error may grant the defendant a windfall to which the law does not entitle him." *Id.* at 369-370 (citing *United States v. Cronic*, 466 U.S. 648, 658  (1984)).

The Michigan Supreme Court's decision in rejecting petitioner's ineffective assistance of counsel claim was not an unreasonable application of *Lockhart.* Although the law at the time of petitioner's conviction clearly stated that petitioner's two prior 1988 convictions could only be counted as one prior felony conviction for purposes of Michigan's habitual offender statute, the Michigan Supreme Court in petitioner's case overruled its previous line of cases and held that each of his 1988 convictions could properly be used separately to charge petitioner with being a third felony habitual offender.  Because the Michigan Supreme Court has now rejected the "same incident test" for Michigan's habitual offender statutes, petitioner is unable to show that he was prejudiced by trial counsel's failure to object to the third habitual offender charge at sentencing or for appellate counsel's failure to raise this claim on his appeal of right.  Accordingly, petitioner is not entitled to habeas relief on his first claim.

*Gardner v. Woods,* U.S.D.C. 2:08-CV-14523

**2.    Trial counsel failed to challenge the**
**suggestiveness of the identification made by the**
**chief witness James Wright.**

Petitioner alleges that his trial counsel was ineffective for failing to challenge the

suggestiveness of the identification made by James Wright.

There are several problems with petitioner's claim.  First, as petitioner notes in

his pleadings, defense counsel's theory at trial was that James Wright shot the victim,

then blamed the shooting on petitioner.  Defense counsel noted  that Wright had

gunshot residue on his hands after the shooting and had delayed calling the police

after the shooting, which defense counsel argued was done to clean the house of

incriminating evidence, including the murder weapon and the shell casings.

In this case counsel was not ineffective for failing to move to suppress Wright's

identification of petitioner, because a misidentification defense would have been

inconsistent with petitioner's defense theory that Wright had fabricated the charges

against petitioner in order to avoid being charged with the crime himself. *See Foster v.*

*Garcia,* No. 2006 WL 3392750, * 19 (E.D. Cal.

November 21, 2006)(counsel not ineffective for failing to challenge identification

procedure since any challenge to the victim's identification would have been

inconsistent with defense theory that the victim was the aggressor and fabricated the

story to justify shooting petitioner); *Sprik v. Class,* 572 N.W.2d 824, 832 (S.D.

1997)(trial counsel's failure to file motion to suppress "show-up" which took place in

alley behind building where rape defendant was found was not ineffective assistance of

16

*Gardner v. Woods,* U.S.D.C. 2:08-CV-14523

counsel, since motion would have been inconsistent with defense that victim fabricated

rape charge as revenge for defendant's failure to give her free drugs).

In any event, assuming that the identification procedure was suggestive,

petitioner is unable to show that he was prejudiced in light of the additional evidence

that bolstered Wright's identification of petitioner.  First, Wright's identification was

strengthened by the fact that Bibbs told him that petitioner had shot him.  Wright's

testimony was corroborated by the testimony of Sewell and Baldwin, who also

indicated that Bibbs had told them that petitioner was his assailant.  The victim's mom

acknowledged that petitioner had gone looking for Bibbs the day of the shooting

because he believed that he had stolen his firearm.  When petitioner was arrested, he

initially gave the police a false name, which would be some evidence of consciousness

of guilt.  The police testified that petitioner admitted to being at Wright's house at the

time of the shooting.

Because of the additional evidence against petitioner, counsel was not

ineffective in failing to challenge the reliability of Wright's identification of petitioner. *See*

*Riley v. Jones,* 476 F. Supp. 2d 696, 710 (E.D. Mich. 2007).  Petitioner is not entitled to

habeas relief on his second claim.

17

*Gardner v. Woods,* U.S.D.C. 2:08-CV-14523

### 3. Petitioner was denied the opportunity to refute the bogus "eleven word" statement by way of a *Walker* hearing.

Petitioner alleges that counsel was ineffective for failing to move for a *Walker*[3] hearing, in order to suppress his statement.

Petitioner has failed to show that his statement would have been suppressed had counsel requested a *Walker* hearing. Petitioner has never alleged that he was coerced or intimidated into making a statement to the police. Instead, petitioner has consistently maintained, at trial, in his post-conviction pleadings in state court, and in his current habeas petition, that he never made any incriminating statement to the police. Under Michigan law, a criminal defendant is entitled to a *Walker* hearing to prevent prejudice that may occur if a defendant has given police inculpatory statements "which are considered legally inadmissible due to the coercive circumstances surrounding the confession." *People v. Spivey*, 109 Mich. App. 36, 37; 310 N.W. 2d 807 (1981). However, "[O]ther factors relating to the confession, such as credibility, truthfulness and whether the statement had been made at all, remain for the determination of the trier of fact." *Id.* A trial court does not have to grant a *Walker* hearing "where a defendant contests the fact of a statement rather than its voluntariness." *People v. Weatherspoon*, 171 Mich. App. 549, 554; 431 N.W.2d 75 (1988); *See also People v. Washington,* 4 Mich. App. 453, 455, 145 N.W.2d 292 (1966)(the question of the voluntariness of defendant's statement could not be

---

[3] *People v. Walker (On Rehearing),* 374 Mich. 331; 132 N.W. 2d 87 (1965).

18

*Gardner v. Woods,* U.S.D.C. 2:08-CV-14523

reviewed by Michigan Court of Appeals so long as the defendant persisted in his denial

that the statement was made).  In cases where a criminal defendant denies making a

statement to the police, the question whether defendant made the statements is

correctly left to the jury to decide. *Weatherspoon,* 171 Mich. App. at 555.  In light of the

fact that there was no legal basis to exclude petitioner's statement, counsel was not

ineffective for failing to move for a *Walker* hearing. *See e.g. Brown v. McKee,* 231 Fed.

Appx. 469, 475 (6th Cir. 2007).

>           **4.     Counsel failed to impeach witnesses who gave
>                    perjured testimony at the preliminary
>                    examination and at Circuit Court.**

Petitioner contends that trial counsel was ineffective for failing to challenge the

allegedly perjured testimony of Jermaine Baldwin and James Wright.  Petitioner claims

that Baldwin committed perjury when he testified that Bibbs had told the police and

paramedics that petitioner had shot him, when none of these personnel testified at trial

to that effect.  Petitioner also claims that Wright committed perjury when he initially

informed the police that the victim had told him that petitioner had pointed a MAC 10

firearm at him, but later denied making the statement at trial.

The deliberate deception of a court and jurors by the presentation of known and

false evidence is incompatible with the rudimentary demands of justice. *Giglio v. United

States*, 405 U.S. 150, 153 (1972).  There is also a denial of due process when the

prosecutor allows false evidence or testimony to go uncorrected. *Napue v. Illinois*, 360

*Gardner v. Woods,* U.S.D.C. 2:08-CV-14523

U.S. 264, 269 (1959)(internal citations omitted).  To prevail on a claim that a conviction was obtained by evidence that the government knew or should have known to be false, a defendant must show that the statements were actually false, that the statements were material, and that the prosecutor knew they were false. *Coe v. Bell*, 161 F. 3d 320, 343 (6th Cir. 1998).  However, a habeas petitioner must show that a witness' statement was "indisputably false," rather than misleading, to establish a claim of prosecutorial misconduct or a denial of due process based on the knowing use of false or perjured testimony. *Byrd v. Collins*, 209 F. 3d 486, 517-18 (6th Cir. 2000).  A habeas petitioner has the burden of establishing a *Giglio* violation. *See Malcum v. Burt,* 276 F. Supp. 2d 664, 684 (E.D. Mich. 2003).  A habeas petition should be granted if perjury by a government witness undermines the confidence in the outcome of the trial. *See Monroe v. Smith,* 197 F. Supp. 2d 753, 762 (E.D. Mich. 2001).

Mere inconsistencies in a witness' testimony do not establish the knowing use of false testimony by the prosecutor. *Coe*, 161 F. 3d at 343.  Additionally, the fact that a witness contradicts himself or herself or changes his or her story also does not establish perjury. *Malcum v. Burt,* 276 F. Supp. 2d at 684; *Monroe v. Smith*, 197 F. Supp. 2d at 762.

Petitioner has failed to establish that the witnesses committed perjury. Petitioner merely points to inconsistencies between the testimony of the two witnesses and the testimony of other witnesses.

With respect to counsel's failure to object to the allegedly perjured testimony of either Jermaine Baldwin or James Wright, petitioner's claim fails because he has failed

20

*Gardner v. Woods,* U.S.D.C. 2:08-CV-14523

to show that the government knowingly used perjured testimony. *See Monroe,* 197 F.

Supp. 2d at 760.   Moreover, petitioner's counsel extensively cross-examined Baldwin

and Wright about the discrepancies between their testimony and the police officers'

testimony.  Counsel was therefore not ineffective for failing to object to the alleged

perjured testimony, where counsel subjected Baldwin and Wright to extensive

cross-examination and brought out the inconsistencies between the testimony of these

two witnesses and the testimony of the police officers. *Id.* at 760-61.

### 5.      Petitioner was denied effective assistance of appellate counsel.

Petitioner contends that appellate counsel was ineffective for failing to raise any

of the claims that he raises in his petition in his appeal of right.

Appellate counsel may deliver deficient performance and prejudice a defendant

by omitting a "dead-bang winner," which is defined as an issue which was obvious from

the trial record and would have resulted in a reversal on appeal. *See Meade v.

Lavigne,* 265 F. Supp. 2d 849, 870 (E.D. Mich. 2003).

This Court has already determined that petitioner's ineffective assistance of trial

counsel claims are without merit.  As is discussed in greater detail, *infra,* petitioner is

unable to show that his mistrial or prosecutorial misconduct claims have any merit.

 "[A]ppellate counsel cannot be found to be ineffective for 'failure to raise an

issue that lacks merit.'" *Shaneberger v. Jones*, 615 F. 3d 448, 452 (6th Cir. 2010); *cert.

den* . 131 S. Ct. 1013 (2011)(quoting *Greer v. Mitchell*, 264 F.3d 663, 676 (6th

21

*Gardner v. Woods,* U.S.D.C. 2:08-CV-14523

Cir.2001)).  Because none of petitioner's claims have merit, petitioner has failed to

show that appellate counsel was ineffective for failing to raise these claims on his

appeal of right.  Petitioner is not entitled to habeas relief on his ineffective assistance of

counsel claims.

### C.   The mistrial claim.

#### 6. Improper reference made by a veteran police officer to Petitioner's prior criminal record.

In his sixth claim, petitioner contends that the trial court should have granted a

mistrial when Officer Mark Amos mentioned that petitioner was a third felony habitual

offender and incorrectly stated that one of the charges against petitioner was federal

flight from prosecution.  Counsel moved for a mistrial, but the trial court denied the

motion.  The trial judge indicated that he would give the jurors an instruction to

disregard the testimony.  Counsel offered to prepare such an instruction but there is no

indication from the record that any such instruction was immediately given.  At the end

of the trial, however, the trial judge did instruct the jury that although there was

evidence that petitioner had been convicted of a crime in the past, this past conviction

could not be used as evidence that petitioner was guilty of the charged offenses.

A trial court has the discretion to grant or deny a motion for mistrial in the

absence of a showing of manifest necessity.  *Walls v. Konteh,* 490 F. 3d 432, 436 (6th

Cir. 2007); *Clemmons v. Sowders*, 34 F 3d 352, 354-55 (6th Cir. 1994).

*Gardner v. Woods,* U.S.D.C. 2:08-CV-14523

In the present case, Officer Amos' brief comment about petitioner being charged with federal flight from prosecution and being a third habitual offender were, by petitioner's own acknowledgment, unsolicited by the prosecutor.  Because Officer Amos' brief remark was unsolicited by the prosecutor, the failure to declare a mistrial did not deprive petitioner of a fair trial, particularly when this remark was a small part of the evidence against petitioner. *See U.S. v. Martinez,* 430 F. 3d 317, 337 (6th Cir. 2005).  Petitioner is not entitled to habeas relief on this claim.

**D.  The prosecutorial misconduct claims.**

**7.    Prosecutor made numerous improper comments during closing argument which accumulated to error.**

**8.    The prosecutor argued in her closing rebuttal, information pertaining to Petitioner's arrest, including the bogus statement which was not in the scope of defense counsel's closing.**

**9.    The prosecutor argued in closing rebuttal, that the victim Dawan Bibbs, told the chief witness James Wright, that petitioner put a MAC-10 up to his head.**

**10.    The prosecutor attacks the credibility of defense counsel's methods for defending clients and insinuated how feebly they make arguments.**

**11.    The prosecutor argued in closing rebuttal, that petitioner was fleeing prosecution and that the jury would be instructed that that was a conscience [sic] of guilt.**

**12.    The prosecutor vouched for the credibility of the police officer who arrested Petitioner.**

23

*Gardner v. Woods,* U.S.D.C. 2:08-CV-14523

In his seventh through twelfth claims, petitioner alleges that he was denied a fair trial because of prosecutorial misconduct.

To prevail on a claim of prosecutorial misconduct, a petitioner must show that the alleged misconduct infected his trial with such unfairness as to make the resulting conviction a denial of due process. *Byrd v. Collins*, 209 F. 3d at 529 (quoting *Darden v. Wainwright*, 477 U.S. 168, 181 (1986))(quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).  Courts must keep in mind that "the touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219 (1982). "Therefore, even if the prosecutor's conduct was 'undesirable or even universally condemned,' *Darden*, 477 U.S. at 181 (quotation marks and citations omitted), it does not constitute a due process violation unless the conduct was 'so egregious so as to render the entire trial fundamentally unfair.'" *Byrd*, 209 F. 3d at 529 (end citations omitted).  Indeed, "[t]he Supreme Court has clearly indicated that the state courts have substantial breathing room when considering prosecutorial misconduct claims because 'constitutional line drawing [in prosecutorial misconduct cases] is necessarily imprecise.'" *Slagle v. Bagley*, 457 F.3d 501, 516 (6th Cir. 2006)(*quoting Donnelly*, 416 U.S. at 645).  In deciding whether prosecutorial misconduct mandates that habeas relief be granted, a federal court must apply the harmless error standard. *See Pritchett v. Pitcher*, 117 F. 3d 959, 964 (6th Cir. 1997).

24

*Gardner v. Woods,* U.S.D.C. 2:08-CV-14523

**7.    Prosecutor made numerous improper comments during closing argument which accumulated to error.**

**8.    The prosecutor argued in her closing rebuttal, information pertaining to Petitioner's arrest, including the bogus statement which was not in the scope of defense counsel's closing.**

**11.    The prosecutor argued in closing rebuttal, that petitioner was fleeing prosecution and that the jury would be instructed that that was a conscience [sic] of guilt.**

**12.    The prosecutor vouched for the credibility of the police officer who arrested Petitioner.**

In his seventh, eighth, eleventh, and twelfth claims, petitioner claims that the prosecutor's rebuttal argument was improper because it presented new arguments which went beyond the scope of defense counsel's closing argument.

A prosecutor's presentation of a new argument or new evidence during rebuttal is an error of state law which does not rise to the level of constitutional violation, for purposes of seeking habeas corpus relief. *See Jenner v. Class,* 79 F. 3d 736, 740 (8th Cir. 1996).  Petitioner would not be entitled to habeas relief on this basis.

In several of the claims, petitioner also contends that the prosecutor shifted the burden of proof in her closing argument.  The trial judge instructed the jury that petitioner was presumed innocent and that the prosecutor had the burden of proving petitioner's guilt beyond a reasonable doubt. (Tr. 8/2/2001, pp. 149-50).  The prosecution's argument did not deprive petitioner of a fair trial, because any possible

*Gardner v. Woods,* U.S.D.C. 2:08-CV-14523

prejudice which might have resulted from any burden shifting comments was cured by

the trial court's instructions regarding the proper burden of proof. *See Scott v. Elo,* 302

F. 3d 598, 603-04 (6th Cir. 2002).

> **7.    Prosecutor made numerous improper comments during closing argument which accumulated to error.**

Petitioner also claims that it was improper for the prosecutor to imply that

petitioner's alibi witness knew that petitioner was guilty of the murder and was hiding

him from the police.  The prosecutor made the following comments that petitioner

complains of:

> Well, isn't that convenient, the only time, the only time that Kimberly Jones has contact with Caprese is, gee, the night of the murder and the one time that Tonia knew that he did.  It's convenient for Kimberly Jones to say that because otherwise in the mean time she would have been at least letting Caprese stay there or helping Caprese, knowing that he was fleeing from the police for a murder.

> (Tr. 8/2/2001, p. 102).

Defense counsel objected to these remarks, but the trial judge overrruled the

objection. (*Id.*).

It is improper for a prosecutor during closing arguments to bring to the jury any

purported facts which have not been introduced into evidence and which are

prejudicial; however, prosecutors must be given leeway to argue reasonable inferences

from the evidence. *Byrd v. Collins*, 209 F. 3d at 535.  In the present case, the

prosecutor's statements regarding the credibility of petitioner's alibi witness did not

26

*Gardner v. Woods,* U.S.D.C. 2:08-CV-14523

constitute prosecutorial misconduct, in light of the fact that significant evidence showed

that the alibi testimony was most likely untrue, the statements were only a small portion

of the prosecutor's argument, and none of the comments would create an impression

that the prosecutor knew of evidence that had not been presented to the jury. *See*

*Cristini v. McKee,* 526 F.3d 888, 901-02 (6th Cir. 2008).

> **9.    The prosecutor argued in closing rebuttal, that the victim Dawan Bibbs, told the chief witness James Wright, that petitioner put a MAC-10 up to his head.**

Petitioner contends that the prosecutor injected matters that were not part of the

record when she argued that Dawan Bibbs had told James Wright that petitioner had

pointed a MAC-10 to his head.  Petitioner argues that because Wright denied making

this statement at trial, there was no evidence to support the prosecutor's argument.

In the present case, although Wright denied making this statement at trial, one

of the police officers testified that Wright had stated that Bibbs had told him that

petitioner pointed a MAC-10 to his head.  Because there was some support on the

record for the prosecutor's remarks, the prosecutor did not inject matters that were not

of record.  Any prosecutorial misconduct in attempting to inject facts that had not been

introduced into evidence was also ameliorated by the trial court's instruction that the

lawyers' comments and statements were not evidence[Tr. 8/2/2001, p. 151]. *See*

*Hamblin v. Mitchell,* 354 F. 3d 482, 495 (6th Cir. 2003).

*Gardner v. Woods,* U.S.D.C. 2:08-CV-14523

**10.    The prosecutor attacks the credibility of defense counsel's methods for defending clients and insinuated how feebly they make arguments.**

Petitioner contends that the prosecutor denigrated defense counsel with the following remarks in her rebuttal:

> The prosecutor present evidence, the prosecutor presents evidence to the trier of fact, the jurors.  You are the triers of fact.  What is the defense attorney's role?  Well, it certainly is not to get up and say, guess What, my guy is guilty, convict him, its to look at the case and to point out pieces of the case and attempt to make arguments to show reasons why he feels the defendant should be found not guilty.  He would not come up here and say the defendant is guilty.  A lot of times we talk about defense attorneys picking issues, but what you really need to do is look at what the most consistent evidence is.

(Tr. 8/2/2001, pp. 144-45).

The Sixth Circuit has held that "[a] prosecutor commenting that the defense is attempting to trick the jury is a permissible means of arguing so long as those comments are not overly excessive or do not impair the search for the truth." *Brown v. McKee,* 231 Fed. Appx. at 480 (quoting *United States v. August*, 984 F.2d 705, 715 (6th Cir.1992)).  Thus, a prosecutor's isolated comments in closing argument that the defense was attempting to trick the jury is not an improper disparagement of defense counsel. *Id.*

Petitioner is not entitled to habeas relief on his claim that the prosecutor improperly denigrated defense counsel, because even if the prosecutor's comments about petitioner's defense were improper, they were not flagrant enough to justify habeas relief. *See Henley v. Cason,* 154 Fed. Appx. 445, 447 (6th Cir. 2005).  The

28

*Gardner v. Woods,* U.S.D.C. 2:08-CV-14523

prosecutor's comments were not so incendiary so as to inflame the jury's passion or

distract them from determining petitioner's guilt or innocence. *See Davis v. Burt,* 100

Fed. Appx. 340, 348 (6th Cir. 2004). Finally, the prosecutor's remarks were brief and

fairly isolated and were part of a larger fifty page argument that focused on the

evidence in the case. (Tr. 8/2/2001, pp. 78-109, 137-148). As mentioned above, the

trial court instructed the jury that the lawyers' arguments were not evidence. The

prosecutor's remarks were relatively isolated, were not extensive, and were only a

small part of a closing argument that focused heavily on summarizing the evidence

presented at trial. *Byrd*, 209 F. 3d at 532. When combined with the instruction from the

trial judge that the attorneys' arguments, questions, and statements were not evidence,

the prosecutor's comments did not render the entire trial fundamentally unfair. *Id.* at

533.

### 12.    The prosecutor vouched for the credibility of the police officer who arrested Petitioner.

Petitioner contends that the prosecutor improperly vouched for the credibility of

the police officer who arrested petitioner, when she made the following argument:

> Think about this. When the officers arrested the defendant and he said, "I
> was there, when the shit went down and I left." That's important. The officer
> was very clear on informing him of the charges, and that being said. Now,
> there's no reason not to believe what the officers submitted. If the officer
> was lying, and this is once again a part of the conspiracy theory, why
> wouldn't the officer say Caprese Gardner said he shot somebody over on
> Hamburg. The officer didn't say that. He said that Caprese said he was
> there when the shit went down and he left.

> (Tr. 8/2/2001, p. 147).

29

*Gardner v. Woods,* U.S.D.C. 2:08-CV-14523

A prosecutor may not express a personal opinion concerning the guilt of a defendant or the credibility of trial witnesses, because such personal assurances of guilt or vouching for the veracity of witnesses by the prosecutor "exceeds the legitimate advocates' role by improperly inviting the jurors to convict the defendant on a basis other than a neutral independent assessment of the record proof." *Caldwell v. Russell*, 181 F. 3d 731, 737 (6th Cir. 1999)(internal citations omitted).  However, a prosecutor is free to argue that the jury should arrive at a particular conclusion based upon the record evidence. *Id.*  The test for improper vouching for a witness is whether the jury could reasonably believe that the prosecutor was indicating a personal belief in the witness' credibility. *United States v. Causey*, 834 F. 2d 1277, 1283 (6th Cir. 1987). "[G]enerally, improper vouching involves either blunt comments, or comments that imply that the prosecutor has special knowledge of facts not in front of the jury or of the credibility and truthfulness of witnesses and their testimony." *See United States v. Francis,* 170 F. 3d 546, 550 (6th Cir. 1999)(internal citations omitted).

Numerous cases have held that a prosecutor does not engage in vouching by arguing that his witnesses have no reason or motivation to lie, when such comments are based on the evidence and do not reflect a personal belief of the prosecutor. *See United States v. Jackson,* 473 F. 3d 660, 672 (6th Cir. 2007); *U.S. v. Israel,* 133 Fed. Appx. 159, 165 (6th Cir. 2005); *U.S. v. Parker,* 49 Fed. Appx. 558, 563 (6th Cir. 2002); *See also Alder v. Burt,* 240 F. Supp. 2d 651, 669 (E.D. Mich. 2003)(prosecutor did not engage in improper vouching when he argued that there was no evidence that prosecution witness had "axe to grind" or any other improper motive, when he asked

30

*Gardner v. Woods,* U.S.D.C. 2:08-CV-14523

rhetorically whether person who would burn 19-year-old female's body to destroy

evidence would give truthful testimony, or when he asked whether prosecution

witnesses had any reason to lie).  The prosecutor's argument here was a reasonable

inference from the evidence and did not suggest that she had any personal knowledge

as to the officer's credibility.  Accordingly, petitioner is not entitled to habeas relief on

his twelfth claim.

### E. A certificate of appealability.

A habeas petitioner must receive a certificate of appealability ("COA") in order to

appeal the denial of a habeas petition for relief from either a state or federal conviction.

28 U.S.C. §§ 2253(c)(1)(A), (B).  A court may issue a COA "only if the applicant has

made a substantial showing of the denial of a constitutional right." 28 U.S.C. §

2253(c)(2).  When a federal district court rejects a habeas claim on the merits, the

substantial showing threshold is met if the petitioner demonstrates that reasonable

jurists would find the district court's assessment of the constitutional claim debatable or

wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000).  "A petitioner satisfies this

standard by demonstrating that ... jurists could conclude the issues presented are

adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S.

322, 327 (2003).  In applying this standard, a district court may not conduct a full merits

review, but must limit its examination to a threshold inquiry into the underlying merit of

the petitioner's claims. *Id.* at 336-37.

The Court will grant petitioner a certificate of appealability with respect to his first

claim.  Although the Court believes that its decision with respect to this claim was

*Gardner v. Woods,* U.S.D.C. 2:08-CV-14523

correct, the Court notes that two Michigan Supreme Court justices dissented from the

majority decision in petitioner's post-conviction appeal.  The fact that two Michigan

Supreme Court justices believed that the majority erred in overruling its decisions in

*Stoudemire* and *Preuss* and that petitioner should only have been charged with being a

second felony habitual offender shows that jurists of reason could decide petitioner's

first claim differently or that the issue deserves encouragement to proceed further. *See*

*Robinson v. Stegall,* 157 F. Supp. 2d 802, 820, fn. 7 & 824 (E.D. Mich. 2001)(habeas

petitioner entitled to certificate of appealability from district court's determination that

state appellate court reasonably applied federal law in determining that any

Confrontation Clause error was harmless, where one judge on the Michigan Court of

Appeals dissented and indicated that he would have reversed petitioner's conviction;

dissent showed that a reasonable jurist found that the issue should have been decided

differently); *See also Tankleff v. Senkowski,* 135 F. 3d 235, 242 (2nd Cir. 1998)(pre-

AEDPA habeas petitioner entitled to certificate of probable cause to appeal, where

intermediate state appellate court split three to two on the *Miranda* issue and the

propriety of the prosecutor's summation); *Palmariello v. Superintendent, M.C.I. Norfolk,*

1988 WL 42393, * 2 (D. Mass. April 11, 1988)(habeas petitioner entitled to certificate of

probable cause where the Massachusetts Supreme Judicial Court's affirmance of his

conviction was non-unanimous; certificate would be issued "[I]n light of the dissenting

opinion filed by a member of the Commonwealth's highest appellate court").  The Court

will grant petitioner a certificate of appealability on his first claim.

32

*Gardner v. Woods,* U.S.D.C. 2:08-CV-14523

The Court will deny a certificate of appealability with respect to petitioner's remaining claims, because jurists of reason would not find the Court's resolution of the claims to be debatable.

Petitioner is also granted leave to proceed on appeal *in forma pauperis*, as any appeal would not be frivolous.  A court may grant *in forma pauperis* status if the court finds that an appeal is being taken in good faith. *See* 28 U.S.C. § 1915(a)(3); Fed. R.App.24 (a); *Foster v. Ludwick*, 208 F. Supp. 2d 750, 765 (E.D. Mich. 2002).

### IV. CONCLUSION

For the reasons stated above, this Court concludes that Petitioner Gardner is not entitled to federal-habeas relief on the claims presented in his petition.

Accordingly, **IT IS ORDERED** that the petition for writ of habeas corpus is **DENIED WITH PREJUDICE**. (Dkt. # 1.)

**IT IS FURTHER ORDERED** that the Court issues petitioner a certificate of appealability with respect to petitioner's first claim and denies a certificate of appealability with respect to the remaining claims.

33

*Gardner v. Woods,* U.S.D.C. 2:08-CV-14523

IT IS FURTHER ORDERED that petitioner is granted leave to proceed on

appeal *in forma pauperis*.


S/Arthur J. Tarnow
Arthur J. Tarnow
Senior United States District Judge

Dated: April 12, 2011

I hereby certify that a copy of the foregoing document was served upon counsel/parties of record on April 12, 2011, by electronic and/or ordinary mail.

S/Catherine A. Pickles
Judicial Secretary